IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES A. SMITH, JR.,

        Plaintiff,

v.

WILLIAM POLLARD AND EDWARD WALL,

        Defendants.

OPINION and ORDER

Case No. 16-cv-10-slc

---

*Pro se* plaintiff James Smith is proceeding on Eighth Amendment claims against defendants William Pollard and Edward Wall for the manner in which they responded to his reports that he was being sexually assaulted and threatened with sexual assault. According to Smith, both defendants failed to protect him from sexual assault and threats of sexual assault and failed to follow the requirements of the Prison Rape Elimination Act (PREA). Pollard and Wall filed separate motions for summary judgment, contending first that Smith failed to exhaust his administrative remedies, and second, that the record would not permit a reasonable fact-finder to infer deliberate indifference. For the reasons that follow, I am granting both motions and closing this case.

UNDISPUTED FACTS[1]

I.     **Parties**

On November 20, 2014, plaintiff James Smith was transferred to Waupun Correctional Institution (Waupun) from Dodge Correctional Institution. Smith remained incarcerated at

---

[1] The following facts are material and undisputed unless I note otherwise. The facts are drawn from defendants' findings of facts as well as Smith's complaint, opposition brief, and attached documents.

Waupun until December 20, 2016 when he was released and placed on extended supervision. (Smith recently was reimprisoned because he violated his terms of supervision).

Defendant William Pollard is employed by the Wisconsin Department of Corrections (DOC), and served as Waupun's warden from March 2011 until January 9, 2016, when he became the warden at Dodge. So, Pollard and Smith were both at Waupun from November 20, 2014, through January 9, 2016.

As warden, Pollard was responsible for the overall administration and operation of Waupun, which included implementing DOC policies, relevant statutes and applicable judicial decisions at an institutional level. With respect to the Prison Rape Elimination Act (PREA) and the Inmate Complaint Review System (ICRS), Pollard relied on his staff to conduct thorough investigations and to comply with the law.

Defendant Edward Wall was the Secretary of the DOC from October 27, 2012, until February 27, 2016. As secretary, Wall had general supervisory authority over DOC operations, but he did not provide day-to-day supervision of DOC institutions because he deferred those types of decisions to DOC staff working at those institutions. When Wall was secretary, his office reviewed letters that inmates wrote to Wall. Generally, Wall did not read those letters himself and delegated the task of responding to those letters to the relevant DOC division. Wall had no involvement in any of Smith's written offender complaints. Smith alleges that in January of 2015 Wall sent him a letter telling him to direct sexual harassment and assault concerns to the Special PREA Investigator Chief; Wall has no recollection of that letter.

## II. PREA Reporting System

The Prison Rape Elimination Act (PREA) was enacted to address the problem of sexual assault and harassment in prisons. DOC accordingly provides various means by which inmates can report sexual assault and harassment and implements procedures to properly review such reports. Specifically, the warden at each institution appoints a PREA compliance manager, who assigns PREA complaints to investigators who are tasked with following up on the complaint and reporting back. When a PREA complaint involves a potential crime, DOC staff inform local law enforcement, which can investigate the complaint independently.

During the relevant time period, Security Director Anthony Meli worked as Waupun's PREA compliance manager. Pollard's role in PREA investigations was to ensure compliance with PREA in general, ensure that Meli was properly assigning PREA complaints to investigators, and review the final investigation for appropriateness and outcome. In addition to handling PREA investigations on a day-to-day basis, Meli also was responsible for responding to the letters Smith wrote to Pollard that included PREA-related allegations. Pollard delegated this task to Meli because his office receives a substantial number of letters on a regular basis and Meli's responsibilities were related to Smith's complaints. Pollard never learned from his subordinates that Smith's complaints were not being properly investigated or that Meli was ignoring Smith's complaints.

**III.    Smith's PREA Investigations**

Between 2014 and the beginning of 2016, Smith's complaints to Waupun staff resulted in three different PREA investigations.[1]

**A.    PREA #2253-14**

When Smith arrived at Waupun in December of 2014, PREA investigation #2253-14 was initiated after he reported to a doctor that an inmate at Dodge overpowered him and grabbed his genital area. Meli assigned investigators to this complaint and filled out a form that documents that DOC informed law enforcement about the complaint. The investigation was transferred to Dodge because that was where the incident occurred. Apparently Dodge staff and outside law enforcement investigated and closed the matter.

According to Smith, on December 11, 2014, Lieutenant Arndt from Dodge, and Lieutenant Lutt from Waupun, both interrogated him about his allegations. Smith claims that they threatened and intimidated him during this interview. Smith further claims that other inmates learned about the sexual assault and harassed him for complaining about it. In December 2014, Smith sent Pollard two letters about that incident. Pollard admits that he reviewed those letters, but did not have any other involvement with the investigation or disposition of PREA #2253-14.

---

[1]   In 2008, while he was incarcerated at Columbia Correctional institution, Smith also filed an inmate complaint alleging that an HSU staff member inappropriately touched him. PREA investigation #142-08 was initiated, and the finding was that the complaint was unfounded. Pollard was not located at Columbia at that time, nor did he have any involvement with that investigation.

4

B.    PREA #2299-15

On December 30, 2014, Smith submitted an interview request slip to Sergeant Jeffrey Perry. In it, Smith reported that he woke up and saw his cellmate, Hiler, lying on a table, masturbating, and looking at him. Perry then provided Smith a telephone and encouraged him to call the PREA hotline, but Smith refused. Perry also notified Captain Westra and gave him Smith's request slip. Finally, Perry removed Hiler from Smith's cell and moved Hiler to another cell hall.

On January 6, 2015, PREA investigation #2299-15 was initiated, outside law enforcement was contacted, and PREA investigators were assigned to investigate the December 30 complaint. However, records of the investigation show that Smith refused to be interviewed and Hiler denied Smith's allegations in his complaint. There were no other witnesses to the incident. For his part, Smith claims that he was "arrested, cuffed, and taken back to the conference room for an interrogation" without being read his rights, during which his unnamed interrogators threatened and harassed him. (Dkt. 12, at 3.)

It is unclear when, but at some point Smith sent a complaint about this incident to Wall. Smith received a letter from Wall, dated January 29, 2015, which referred him to the Special PREA Investigator Chief. Then, after Smith apparently reported the incident to the PREA chief, in February of 2015, Smith alleges that he was handcuffed, interrogated, threatened, and harassed him about his allegations. In a March 6, 2015, report, investigators concluded that Smith's allegations were unsubstantiated. Meli reviewed the decision and approved it on March 9. On March 16, 2015, Pollard approved the disposition of the investigation.

5

C.     PREA #3289-16

Pollard left Waupun in January 2016. On March 22, 2016, Smith submitted a Psychological Services Request form in which he wrote that Dr. Charles sexually harassed him. That report initiated PREA investigation #3289-16. Pollard was not involved in that investigation, but the record of that investigation indicates that Charles resigned in February of 2016 and Smith refused to speak with investigators about it.

IV.    Smith's Inmate Complaints

When Pollard and Smith were both located at Waupun, Smith filed two inmate complaints through ICRS related to sexual assault or threats, WCI-2015-11572 and WCI-2015-14041. In WCI-2015-11572, dated June 27, 2015, Smith complained that Tonia Moon, an inmate complaint examiner (ICE), improperly rejected his complaints of sexual harassment by "Dr. Steven Charles," a purported mental health professional at Waupun. ICE J. Muenchow rejected WCI 2015-11572 because there was no staff member named "Steve Charles" and no record in the ICRS system matching Smith's description of his complaints. Smith appealed the rejection, but Pollard reviewed the appeal and affirmed the rejection.

In WCI-2015-14041, dated August 3, 2015, Smith complained that Meli denied his request for protective custody placement. ICE Moon recommended dismissal of the complaint, suggesting that Smith submit evidence of threats to Captain Westra. Pollard reviewed ICE's recommendation and accepted it. Smith did not appeal the dismissal to the CCE.

In July of 2015, Smith attempted to file two complaints related to the issues in this lawsuit, but they were both returned to him. In his proposed complaints, Smith included allegations that he had complained about being sexually harassed, and that the harassment should be reported to the warden. On July 15, 2015, the ICE returned the first complaint to Smith because it did not clearly state one issue, and instead was "a long statement only with no specifics." (Dkt. 61-4, at 2.) The ICE directed Smith to provide additional details about his complaint, such as what happened to Smith, who was involved, and when the events took place. Smith did not resubmit the complaint, so staff did not investigate it.

In his second attempted complaint, Smith submitted a second request to review the rejection of WCI-2015-11572, his previous complaint against ICE Moon. Because Smith's appeal of WCI-201-15-11572 had been reviewed and a receipt issued to Smith, ICE Moon returned this complaint to Smith as well. Smith did not appeal or pursue this complaint further.

OPINION

Pollard and Wall separately seek judgment on the ground that Smith failed to exhaust his administrative remedies with respect to his claims against them, and they separately argue that they are entitled to judgment because Smith's Eighth Amendment claims fail on the merits. First, I will explain why Smith's claims fail because he did not properly exhaust, and then I will explain why Pollard and Wall would be entitled to judgment regardless.

I.      Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust his administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, defendants bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. Under these provisions, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The 14-day deadline can be waived for extended for good

cause. *Id.* If the institution complaint examiner makes a recommendation that the complaint be granted or dismissed on its merits, then the appropriate reviewing authority may dismiss, affirm or return the complaint for further investigation. *Id.* § 310.12. If an inmate disagrees with the decision of the reviewing authority, then he may appeal. *Id.* § 310.13. If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal the rejection. *Id.* § 310.11(6).

Smith never filed an inmate complaint concerning how either Pollard or Wall handled his complaints about sexual assault or threats of sexual assault. Rather, the record indicates that Smith filed two inmate complaints during the relevant time period, one against ICE Moon and the other against Meli, which he did not appeal. And in July 2015 Smith attempted to file two complaints related to sexual assault or threats of sexual assault, but he did not follow ICE's directions after the complaints were returned to him with instructions. As such – and setting aside the fact that *none* of the complaints alleged that Wall or Pollard were failing to protect him – Smith did not follow Wisconsin's grievance procedure and staff at Waupun had no opportunity to review and address Smith's claims in this lawsuit.

Smith's filings do not suggest otherwise. For one, Smith offers no evidence that contradicts the record showing that he never filed an inmate complaint related to how defendants responded to his complaints of sexual assault and threats of sexual assault. Instead, he complains that the defendants failed to submit its exhaustion summary judgment motion by the court's September 23, 2016, deadline, but he does not dispute defendants' proposed findings of fact on that issue. It's true that I set September 23, 2016, as the deadline for summary judgment motions alleging failure to exhaust. (Dkt. 36.) Yet Pollard and Wall both explain that

9

they missed it because Smith was pursuing an interlocutory appeal when the deadline fell. The purpose of the exhaustion deadline is to give the parties an earlier opportunity to address exhaustion because it typically does not require discovery and is often undisputed. Given that both defendants pled this affirmative defense in their answer, and Smith will not be unfairly prejudiced by my resolution of this defense now, I will not penalize them for letting this deadline pass without seeking leave to extend it.

Smith further objects to defendants' motion because he claims that they stopped him from properly responding to the motion for summary judgment because he was released and did not have access to his legal materials. This court strives to treat *pro se* plaintiffs like Smith with lenity; Smith already has been the beneficiary of lenient treatment by this court. When the court learned that Smith had been released, then placed back in custody at MSDF, I extended his summary judgment opposition deadline by two weeks. (Dkt. 67.) In his opposition, Smith has not explained why he could not have responded to defendants' arguments with his own recollection of the relevant events. While he complains vaguely about the repeated sexual assaults and threats of sexual assault he claims to have endured, he does not offer any details about those allegations, much less respond directly to Pollard's and Wall's version of the relevant events.[2]

---

[2] Smith also argues that he is disabled, and thus the Americans with Disabilities Act (ADA) should be applied to assist him in his claim. I previously explained to Smith that his claims in this lawsuit do not implicate the ADA. Finally, Smith's recitation of the history of racial discrimination has no bearing on his claims in this lawsuit or how the defendants and this court are treating his claims.

Accordingly, given Smith's failure to use ICRS procedures to pursue his claims against Pollard and Wall, I am granting their motions for summary judgment because it is apparent that Smith has failed to exhaust his administrative remedies.

II.  **Merits**

Even if Smith were to have properly exhausted his claims, he has failed to submit any evidence sufficient to warrant a trial with respect to his claims against Pollard and Wall. Smith is proceeding on Eighth Amendment claims against Pollard and Wall for their alleged failure to protect Smith from sexual assault and threats of sexual assault.

The Eighth Amendment prohibits "punishment" that is "cruel and unusual" and imposes a duty on prison officials to provide "humane conditions of confinement" by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials also must ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Id*. To state an Eighth Amendment based on a failure to prevent harm, an inmate must demonstrate that: (1) the harm that befell the prisoner was objectively, sufficiently serious and a substantial risk to his health or safety; and (2) the individual defendants were deliberately indifferent to that risk. *Id*.; *see also, e.g., Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Matos ex. Rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003) (citation omitted)). The Seventh Circuit has held that "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen.'" *Santiago*, 599 F.3d at 756 (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)). Pollard

11

and Wall argue that summary judgment is appropriate because the record does not support an inference that either were deliberately indifferent. I agree.

### A. Pollard

Pollard argues that he cannot be held liable based solely on his position as a supervisor, and that regardless, his staff properly responded to Smith's complaints. A supervisory defendant cannot be held liable for a subordinate's conduct simply because of his position as a supervisor. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). To maintain a claim against a supervisory defendant, a plaintiff must allege facts showing that the supervisor had sufficient personal responsibility for the unconstitutional conduct. Said another way, the facts must support a finding that the supervisor "directed the conduct causing the constitutional violation, or . . . it occurred with [his] knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001) (internal citations omitted).

Pollard acknowledges that Smith complained directly to him about sexual assault and threats of sexual assault, but Pollard did not ignore those complaints or respond in a manner that suggests that Pollard was allowing Smith to be continually threatened, harassed, or assaulted. Rather, Pollard did not take action with respect to PREA #2253-14 because that investigation involved an incident at Dodge Correctional Institution. Dodge staff conducted an investigation, which included transferring Smith out of Dodge and contacting local police. While Smith complained to Pollard about how that investigation was handled, Pollard's deference to the warden and security director at Dodge does not create an inference that he was ignoring a serious risk of harm. If, *arguendo*, Smith still had been housed at Dodge and (for some hypothetical reason) had reached out to Pollard complaining that the staff at Dodge were ignoring his complaints, then perhaps Pollard's inaction could be faulted. But that is not scenario actually presented to the court, so there is no basis upon which a reasonable fact-finder could

conclude that Pollard's decision not to follow up about PREA #2253-14 constituted deliberate indifference.

As for the investigations into the incidents that Smith reported to have occurred at Waupun, Pollard delegated the day-to-day management of Smith's complaints to an employee at Waupun who was more familiar with PREA-type complaints. Pollard assigned Meli to handle Smith's complaints, and nothing about this delegation supports an inference of deliberate indifference. Rather, Pollard's decision to delegate Smith's PREA-related complaints to Meli, the PREA compliance officer, was logical. Unlike Pollard, Meli had hands-on involvement with PREA investigations, which enabled him better to assess and deal with Smith's written complaints in an effective manner. Pollard was likewise entitled to rely on Meli to properly handle the investigations. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (prison officials are "entitled to relegate to the prison's medical staff the provision of good medical care"). Given that there is no evidence suggesting that Pollard knew that Meli was either ignoring Smith's complaints or handling them in a patently inappropriate manner, Pollard cannot be held liable in his supervisory capacity.

Indeed, even if I were to put Pollard in Meli's shoes (or if Meli were a defendant in this lawsuit), the record does not support an inference that Meli handled Smith's reports of sexual assault and threats with deliberate indifference.[3] The evidence related to those investigations indicate that the cellmate who Smith reported had been masturbating while watching Smith was moved promptly, PREA investigations were commenced, and the investigators followed up with

---

[3] In the order granting Smith leave to proceed, I explained that he could seek leave to amend his complaint to add Meli as a defendant. Despiting pursuing several other motions related to his claims, Smith never sought leave to add Meli as a defendant. As such, I have concluded that Pollard and Wall are the only defendants.

14

Smith in attempts to interview him, which Smith rejected. While Smith may have alleged that he continue to be sexually harassed and assaulted after complained about threats or assaults, the steps that Waupun's staff took in investigating his complaints were not unreasonable; in fact, these steps suggest that staff took affirmative steps to curb any further threats of harm.

Smith's allegations about how he was treated during the PREA investigations do not change this result. With respect to PREA #2299-15 (Smith's complaint about his cellmate), Smith alleged that when staff questioned him, they shackled him and harassed and threatened him. Yet even this version of events, which I assume to be true for summary judgment purposes, does not establish that Waupun staff did not respond to Smith's complaint. At most, it creates an inference that this attempt to interview Smith involved improper tactics. Smith does not claim that Meli knew about this interview. Smith does not dispute that staff took other steps to resolve this complaint by interviewing Smith's cellmate and moving Smith out of that cell. On this record, no reasonable fact-finder could conclude that Meli's handling of PREA #2299-15 constituted deliberate indifference.

B. Wall

Judgment in Wall's favor also is appropriate. As DOC Secretary, Wall delegated the day-to-day operations of the DOC, which included responding to inmate letters. Wall concedes that his office sent Smith the January 2015 letter, but states that he had no involvement in writing it, nor does he have any recollection of it. Other than the letter, there is no evidence that would suggest that Wall knew anything about how Smith's PREA were being handled at Waupun.

Viewing the evidence in the light most favorable to Smith, I will infer that Wall actually did write the January 29 letter and simply cannot remember it. But judgment in Wall's favor still

15

is appropriate, in part because the investigation was already ongoing at that time and because Wall's response did not create an inference of deliberate indifference. The letter directed Smith to submit concerns about his cellmate to the Special PREA Investigator Chief, which was a reasonable (albeit unnecessary) directive given the nature of Smith's complaints to Wall. Even though the Waupun investigators concluded that Smith's claims were unsubstantiated, Wall's letter was part of series of events that made Waupun staff aware of his complaints. Thus, assuming that Wall actually did write this letter, this response to Smith's complaints does not create an inference of deliberate indifference.

Moreover, even if a reasonable fact-finder could conclude that Wall was deliberately indifferent, summary judgment would be appropriate on grounds of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The law is "clearly established" when "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Campbell*, 256 F.3d at 701. The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. *Id.*

Assuming that Wall's letter to Smith was sufficient to implicate him personally, Smith does not have a clearly established right to have Wall personally investigate his complaints of sexual assault and threats of sexual assault. Accordingly, I am granting both Pollard's and Wall's motions for summary judgment and closing this matter in their favor.

One final note. I denied Smith's motion for assistance in recruiting counsel on multiple occasions during the course of this lawsuit. I did so without prejudice to Smith's ability to renew his motion if the difficulty of the case exceeded his ability to litigate it. *See Pruitte v. Mote*, 503 F.3d 647 (7th Cir. 2007). While Smith did not renew this motion for purposes of summary judgment, I have since considered whether to recruit counsel *sua sponte*, and concluded that this case does not warrant it.

The legal and factual complexity of this lawsuit did not exceed Smith's ability to litigate it. I recall Smith's demeanor from the preliminary pretrial conference in this matter, and he struck me as enthusiastic, knowledgeable about the events comprising his claims, and capable of advocating for himself. Smith's claims were straightforward: he claimed that Pollard and Wall failed to protect him from sexual assault and harassment and threats of sexual assault. To overcome the summary judgment hurdle, Smith had to do two things: (1) submit evidence that he properly exhausted his administrative remedies, and (2) submit evidence that each defendant knew that he was experiencing a risk of serious harm but that either or both defendants completely failed to respond or responded inappropriately. Instead of submitting relevant evidence, Smith focused on issues unrelated to the pending motions.

Smith's failure to properly respond to the motion for summary judgment does not indicate that he was unaware of his burden of proof. Rather, it appears that Smith simply chose not to follow the court's procedures and advice about how to litigate this matter. The materials that Smith *did* file indicate that he has read this court's orders and he disagreed with them. Similarly, his objection to defendants' exhaustion argument and repeated references to his complaints about sexual assault, harassment, and threats, further suggest that he has read

17

defendants' motions and chosen to respond to only part of them. Accordingly, while counsel may have been able to advocate with a tighter focus than Smith chose to, recruiting an attorney was not appropriate in this case because Smith showed himself capable of handling this matter on his own.

ORDER

IT IS ORDERED that:

1. Defendants Pollard's and Wall's motions for summary judgment (dkts. 57, 62) are GRANTED.

2. The clerk's office is directed to enter judgement in Pollard's and Wall's favor and close this case.

Entered this 5th day of September, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge